### Jonas Foster v. The State.

#### No. 408.   Decided February 23, 1910.

#### Rehearing denied April 13, 1910.

**Carrying Pistol—Insufficiency of the Evidence.**

Where, upon trial for unlawfully carrying a pistol, the evidence showed that the defendant took the alleged pistol to another for the purpose of selling it to him and did sell it, according to an understanding previously had with him, the conviction could not be sustained.

Appeal from the County Court of Brazos.   Tried below before the Hon. A. G. Board.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*T. R. Batte* and *J. G. Minkert* and *W. T. Young*, for appellant.

*John A. Mobley,* Assistant Attorney-General, and *Lamar Bethea,* County Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for unlawfully carrying a pistol. The State proved by Lula Jones that she lived near the A. & M. College with a man whose name was Bud Nero, and cooked for him. On the 5th of June appellant came to the residence of witness and Nero about 8 or 9 o'clock in the evening. When he reached there he handed witness a pistol with the request that she put it away and take care of it. She took the pistol and put it in her trunk. This happened immediately upon his arrival at the place, and he never subsequently called for it. Nero was working at the mess hall of the college, and came home about an hour after appellant's arrival. Shortly after his arrival he called upon witness for the pistol, and being informed by her where he could find it, he went and took the pistol from her trunk and put it away. Dozier testified that on the 5th of June, somewhere about half past two or three o'clock in the evening, appellant left the place of his residence, which was owned by Ed Carl; that he went away on foot and carried the pistol with him; that he traveled the public road in the direction of Welborn, which was the nearest and most direct route from Carl's residence to that of Bud Nero. The evidence of Nero was practically the same as Lula Jones as to their place of residence, and incidental matters, and also that appellant was at their house that evening when he, Nero, reached it after his day's work was ended at the mess hall. He also stated that he had a conversation with appellant about two weeks before the one in question, in which he told appellant that he, Nero, wanted to purchase a good pistol. Appellant informed him that he had such a pistol and would sell it to him; whereupon witness told him to bring it to his house, and if upon inspection he found it as represented he would purchase the pistol. On the night mentioned, after going from his work at the college, and after his conversation with appellant in regard to the pistol, he obtained possession of it from the witness Lula Jones. After looking at the pistol in company with appellant, he agreed to purchase same and pay $9 for it. He paid $3 in cash, and was to pay the remainder $6 later. Nero kept the pistol until he delivered it to the constable, Griffin. Griffin gave Nero $3 and took the pistol away from him. Here the county attorney asked the witness the following question: "Didn't you tell Mr. Griffin that Jonas Foster had pawned the pistol to you?" To this the witness replied, "No; I told Mr. Griffin that I had bought the pistol from the defendant. Mr. Griffin paid me $3 and took the pistol. I have never seen it since. Jonas Foster has never called for the pistol." The Constable Griffin testified that he lived in the Welborn precinct, and is constable. He further stated that a day or two after the date charged in the information he arrested defendant, and that shortly afterwards he had a conversation with the witness Nero, in which he asked him about defendant's pistol, and in

regard to this matter, in reply to the county attorney's question, he stated: "He told me not exactly that, but that the defendant was broke and wanted some money, and that he, Nero, let the defendant have $3 on the pistol and kept the pistol." This is the substance of the testimony.

It is earnestly insisted that the evidence is not sufficient to justify the conviction. We are of opinion that this contention is correct. It seems to be an uncontroverted fact that appellant carried the pistol from his home to that of the witness Nero, and deposited it immediately with the witness Lula Jones. It is also an uncontroverted fact that when Nero came to his house that night he obtained possession of the pistol by means of a purchase. The State's witnesses swear to these facts. Griffin for the State testified that he secured the pistol from Nero, and not from appellant, and it is shown by the record that appellant never had possession of the pistol after he reached the residence of Nero, but that Nero obtained possession of it immediately upon reaching home, and continued in possession of it until the officer paid him $3 for the pistol and took it away from him. The only controversy that could occur in regard to this matter was an issue between Griffin and Nero as to whether Nero told Griffin he had loaned money on the pistol or had purchased it, but that was a matter of contradiction between the State's witnesses. Under this state of case we are of opinion that the State is not entitled to a verdict of guilt on the facts. If appellant took the pistol, as the State's evidence shows he did, to Nero for the purpose of selling it to him, and Nero paid him $3 and took the pistol, and subsequently owned and controlled it until the constable took it away from him, appellant would not be guilty. We deem it unnecessary to cite authorities.

Because the evidence is not sufficient to warrant the conviction, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied April 13, 1910.—Reporter.]