[Crim. No. 1470.   Second Appellate District, Division One.—August 13, 1927.]

## THE PEOPLE, Respondent, v. R. C. MAYFIELD, Appellant.

Wm. T. Aggeler, Public Defender, and S. V. O. Prichard, *Amicus Curiae,* for Appellant.

U. S. Webb, Attorney-General, and J. L. Flynn, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The only ground of appeal presented by defendant consists of a claim that he was compelled to accept counsel not chosen by him, and was denied the right to present his own defense without counsel.

At the time of entering defendant's plea he was represented by attorneys, who thereafter at the defendant's request were permitted to withdraw from the case. The court then asked the public defender ''in view of the defendant's

attitude to sit in on the case and render such assistance as the defendant is willing to accept from him.'' The public defender appeared with the defendant at the trial. The defendant stated to the court that he had made arrangements with another attorney who at the time was out of the state of California, and therefore could not be present. That defendant did not entirely disclaim the assistance of the public defender at that time is indicated by the fact that the public defender stated to the court that the defendant had handed to him a list of witnesses whom he wished subpoenaed in the case. To this statement defendant took no exception. The public defender cross-examined the state's witnesses, without any further objection from the defendant.

After the close of the case on the part of the people the defendant was sworn, and testified in answer to a series of questions propounded to him by the public defender as his counsel. At that time the defendant made no objection to this procedure. Thereafter, one George K. Home was called as a witness for defendant, apparently for the purpose of proving the good reputation of the defendant. The witness having been sworn, the defendant asked for the privilege of questioning the witness; the court replied, ''No, you have a lawyer here. Let the lawyer ask your questions. You can advise with your lawyer.'' The witness being asked whether he knew the defendant's reputation in the community in which he resides, for truth, honesty, and integrity, replied, ''I do not.'' Defendant then asked to be allowed to question the witness, and this request was denied by the court. Thereafter other witnesses were examined on behalf of the defendant by the public defender.

That the defendant was guilty of the crime charged, the record leaves no reasonable doubt; he simply stands upon the proposition that he was denied the constitutional right of representing himself at the trial without counsel. The record to which we have referred indicates that the defendant did not firmly and consistently insist upon his rights in the matter, but to some extent at least made affirmative use of the services of the public defender. Nevertheless, we take into consideration the fact that probably the defendant was not well acquainted with legal procedure and we assume, for the purposes of the argument, that the services of the attorney were forced upon him,

and that his right to defend himself without counsel was denied, and that this was error. The question is thus presented whether or not for that reason alone the judgment should be reversed and the cause remanded for a new trial. We think that this question should be answered in the negative. The case furnishes a proper occasion for the application of the rule stated by the supreme court in *People v. O'Bryan*, 165 Cal. 55, 56 [130 Pac. 1042], where the court, speaking through Mr. Justice Sloss, declared that section 4½ of article VI of the constitution has at least the effect of abrogating the old rule that prejudice is presumed from any error of law, and further said: "But it does not follow that every invasion of even a constitutional right necessarily requires a reversal. It may well be that the court, after examining the 'entire cause including the evidence,' is of the opinion that the error complained of, whatever its character, has not resulted in a miscarriage of justice. The mere fact that the assignment of error is based upon a provision of the constitution is not conclusive. The final test is the opinion of the appellate court upon the result of the error. No doubt this view requires the court, to some extent, to weigh the evidence, and form conclusions upon its weight—a function which, heretofore, has been reserved for the jury. But it cannot be doubted that the legislators, in proposing the amendment, and the electors, in adopting it, intended to put upon the courts the performance of just that function. We are not substituted for the jury. We are not to determine, as an original inquiry, the question of the defendant's guilt or innocence. But, where the jury has found him guilty, we must, upon a review of the entire record, decide whether, in our judgment, any error committed has led to the verdict which was reached. If it appears to our satisfaction that the result was just, and that it would have been reached if the error had not been committed, a new trial is not to be ordered."

The judgment and order are affirmed.

Houser, J., and York, J., concurred.