[Crim. No. 2466.   Third Dist.   Nov. 4, 1953.]

THE PEOPLE, Respondent, v. JEHU JENNINGS, Appellant.

Richard F. Desmond for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This appeal is taken from a judgment based upon a jury verdict convicting the appellant of the offense of violating section 4502 of the Penal Code which prohibits possession of a weapon by an inmate of a state prison. Appellant had been committed to the state prison at Folsom for receiving stolen property. On November 24, 1952, and while holding a position as a trusty he was engaged in work without the prison walls. On that day when he had finished work and after changing into prison garb he was admitted through the gate into the prison proper. As he entered the yard a guard noticed an object protruding from the rear of his boot. When appellant, on command, removed his boot it was found to contain a knife wrapped in tape and lying along the inner sole of the boot. Thereafter his cell was searched, and, although the first search revealed nothing, a repeated search on the following day revealed another knife concealed in a hollow leg of the prisoner's bunk. Thereafter he was charged by information with two counts of violation of said code section. He refused the assistance of counsel at his trial, although the assistant public defender, who had been appointed to defend him, remained at the counsel table to render such assistance as might be necessary. Appellant was acquitted of the count which involved possession of the knife found in the leg of his bunk. He was convicted of possession of the knife found in his boot.

For reversal of the judgment appealed from appellant asserts: 1. That though he was admittedly in possession of the knife in his boot, yet the evidence was insufficient to show that he had knowledge of such possession; 2. That he was unlawfully prejudiced in the trial of the first count by the joinder of the second count therewith and the concurrent trial as to both. Although appellant had refused the aid of counsel at his trial he did request that counsel be appointed to assist him on his appeal and counsel was so appointed. At the argument an additional point for reversal was urged in that

it was claimed that the court erroneously struck out material testimony given by defendant as a witness in his own behalf.

■ The evidence was sufficient to support appellant's conviction. As to the element of knowledge the jury were entitled to conclude from the admitted fact that the knife wrapped in tape was lying along the inner sole of the appellant's boot as he walked into the yard that he could not but have known of the presence in his boot of so large and so rigid an object. His contention was that he had been imbibing too freely of a drug he possessed and which he said he was using to relieve a sinus infection and that the effect of the drug, compounded and enhanced by a like over-indulgence in intoxicating liquor, had rendered him unable to appreciate the presence of the knife in his boot. He produced witnesses who testified that his condition was that of a man who had little awareness of what was going on, but there were other witnesses who testified that he appeared to be quite sober and in the full possession of his normal faculties. The issue of knowledge was one of fact which the jury determined against him and that determination is obviously supported by sufficient evidence to make it binding on appeal. The code section involved absolutely prohibits all prisoners in any state prison, without qualification, from possessing or carrying upon their persons certain designated deadly weapons and proof of the possession of the prohibited weapon warrants the inference it was carried in violation of the statute. (*People* v. *Wells*, 68 Cal.App.2d 476 [156 P.2d 979]. See, also, *People* v. *Patterson*, 102 Cal.App.2d 675 [228 P.2d 51], *People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433], and *People* v. *Marcus*, 120 Cal.App.2d 347 [260 P.2d 1051].)

■ As to the second point raised, to wit, the prejudice appellant contends he suffered through the joining of the second count with the first, the answer is that such joinder is specifically authorized by Penal Code, section 954, which permits an information to charge two or more different offenses of the same class and leaves it to the discretion of the trial judge to order them to be tried separately for good cause shown. The record does not show that such a request was made and if it had been, and, being made, had been denied, it is obvious from what has been said that the court would have been acting well within the bounds of discretion in declaring such denial.

■ The final contention advanced on oral argument is based upon the following record: When the prosecution had

concluded its case in chief and in the course of presenting his defense the defendant had taken the stand, he was asked by the assistant public defender as to his status in the case as defendant and as to his being an inmate of Folsom Prison. He was then asked to tell the jury what had happened on the days when the knives had been discovered. He proceeded to relate where he had been working and on what work he had been engaged before he had returned to the prison yard. He related his use of the drug and the extent of that use and told the jury that he had been drinking and that he had taken too much of the drug as well as too much of the drink. He said he remembered little of what happened when he came through the gate. He told how the prisoners leaving the yard for the day's work outside the walls threw their prison garb in a pile on the floor of a shack used for making the change and how they changed back into them before going into the yard again. He said that evidently he had gotten hold of the wrong boots and that while he could not deny that there may have been something in one of them yet he denied that he knew there was a knife in it. He then stated that he had been in Folsom for five years and that as of the time of trial had exactly 39 days before he would be entitled to be discharged as a free man. All of the foregoing was admitted without objection. He then added that he had received a letter about four days before the trial telling him that his father was dying. At that point the following occurred: The Prosecutor: "I am going to move to strike all this testimony. The Court: You object to that? [The Prosecutor]: Yes. The Court: All right, objection sustained." He now contends that the court actually struck from the record all of the testimony he had given prior to the objection's having been made. We do not think this is a fair analysis of the record. We think it is clear enough that the only part to which the objection was made and to which the order was directed was the statement concerning the letter he said he had received four days before, telling him that his father was dying. Clearly this matter was inadmissible and it is equally clear that the matter which preceded it was all admissible. It was not until he spoke of the letter that the prosecutor moved to strike. The record does show, to be sure, that the motion to strike was directed to "all this testimony," but we think it would be unreasonable to interpret the record so literally. What we have said is substantiated when we turn to the argument which the appellant

made to the jury and in which he referred to the testimony he had given, and which he now says was stricken, and based his argument on it. No objection was made that he was discussing matters outside the record. Furthermore, the jury was instructed upon the issue of knowledge and the court told the jury that they must not convict unless, among other things, they were convinced that he knew beyond a reasonable doubt that he had the knife. When the whole record is considered, everyone, including the appellant, must have understood that the court's order was directed only to the matter concerning the letter.

The judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 3, 1953.