[Crim. No. 2498.   Third Dist.   June 13, 1955.]

THE PEOPLE, Respondent, v. FRANK MARCUS, Appellant.

Frank Marcus, in pro. per., and Richard M. Grossberg, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal from an order denying a new trial and from a judgment entered upon a jury's verdict which convicted appellant of an assault with a deadly weapon upon one Richard Smith, and of three counts of possessing a sharp instrument or knife while he was an inmate of a state prison. (Pen. Code, § 4502.) He was

acquitted upon a fifth count charging him with an assault with a deadly weapon upon one George Heck.

Appellant has been imprisoned at Folsom Prison since 1949. The victim of the assault of which he was found guilty was a fellow inmate. Appellant challenges the sufficiency of the evidence and also contends that as to all the offenses of which he was convicted he acted without criminal intent and for the sole purpose of being brought to trial so that he could testify to the cruel and inhuman treatment to which he has been subjected at the prison.

█ Appellant's intentions and purposes in possessing a deadly weapon in violation of section 4502 of the Penal Code are wholly irrelevant. That section "absolutely prohibits all prisoners in any state prison, without qualification, from possessing or carrying on their persons certain designated deadly weapons. The intention with which the weapon is carried on the person is not an element of the offense." (*People* v. *Wells*, 68 Cal.App.2d 476, 481 [156 P.2d 979]; *People* v. *Marcus*, 120 Cal.App.2d 347, 348 [260 P.2d 1051].) There was no need of proof of evil motivation. █ Appellant's admission that he possessed a sharp knife or instrument while he was imprisoned at Folsom established the three violations of section 4502 of the Penal Code.

█ Appellant's intent was an essential element in the proof of his guilt of the assault charge. (*People* v. *Wells*, 33 Cal.2d 330, 346 [202 P.2d 53].) The trial court admitted evidence of the mental state of the appellant at the time of the commission of the overt acts. Appellant testified in his own behalf and was permitted to narrate at length as to how he had schemed to be charged with some offense for which he would be brought to trial so that he could thereat expose the bestial treatment to which he claimed the inmates at Folsom Prison were subjected. Twelve fellow inmates, the prison physician, and a priest testified that appellant had frequently declared that he intended to get caught doing something for which he would be brought to court where he could denounce the prison officials. Into this matter of intent he was allowed to go fully. But he complains that his court-appointed counsel failed to call witnesses who would testify as to the facts of mistreatment, such as that he had been left in a cell for 40 hours without a drink of water. Such evidence would have been at most cumulative on the issue of intent and immaterial for any other purpose. Moreover, the record does not show that the court refused to

subpoena any witnesses requested by the appellant. George Heck, a victim of one of the charged assaults, was brought from Folsom to attend the trial. He testified that the assault committed upon him was feigned and done pursuant to a prearranged plan between him and appellant and in further-ance of appellant's desire to do something for which he would be brought to trial so that he could testify to the conditions that prevailed at Folsom. The jury obviously afforded cre-dence to this explanation as appellant was acquitted of the charged assault upon George Heck. However, no such excuse for the assault upon Smith was asserted. Appellant admitted that a fist fight started between the two and that after the officers separated them, he deliberately scratched Smith with a knife. He said he did so in such manner that no serious injury could be caused thereby. He disavowed any intent to do more than he did, that is, nick or scratch Smith. The prison physician, who examined Smith immediately after the incident, testified that he found a superficial scapular wound which penetrated the outer surface of the skin and which amounted to no more than a scratch. The doctor further testified that this could not have been done by "a direct pressure against one point in the skin. It had to be scuffed one way or the other from the point of entrance to cause that type of wound" and it appeared "that there was a limited amount of force, or it certainly would have gone through the skin."

There is no direct evidence that appellant struck Smith with sufficient strength "to commit a violent injury" (Pen. Code, § 240), or that he wielded the blow with such force as could cause great bodily harm. However, the jury's implied finding that appellant so did must be upheld. Two guards testified that after they overpowered and disarmed appellant, he threatened to kill Smith. Appellant admitted that prior to the altercation he had had "an argument" with Smith and told him "if we have to fight, we are going to fight." From that evidence the jury could infer that, due to animosity, appellant intended to and did strike Smith with sufficient force "to commit a violent injury." (Pen. Code, § 240.)

Appellant argues that at the time he assaulted Smith he was not "undergoing a life sentence" within the purview of section 4500 of the Penal Code. The basis of this con-tention is that although a life sentence had been imposed on appellant it was not to commence to run until after the

expiration of the term of a sentence of 1 to 15 years under which he was then imprisoned and serving time. We need not adjudge the merits of this technical argument as appellant was not convicted of the charged offense of committing an assault with a deadly weapon while undergoing a life sentence in a state prison (Pen. Code, § 4500), but of the lesser offense, included therein, of assault with a deadly weapon. (Pen. Code, § 245.)

Appellant assigns as error the fact that he was denied the right to defend himself without the assistance of the public defender. At the outset of the trial appellant announced that he did not think he would get a fair trial if his court-appointed counsel represented him as he had failed to call certain witnesses upon the argument of a motion for a change of venue. The court ordered the trial to proceed with counsel due to the circumstances and the fact that the death penalty would be mandatory if appellant were convicted upon the two counts charging violations of section 4500 of the Penal Code. ▪ It is true that a defendant has the right "to defend in person" (Cal. Const., art. I, § 13; Pen. Code, § 686), and that he cannot be compelled to accept the assistance of counsel. (See 17 A.L.R. 266.) However, a violation of such right does not in every case constitute reversible error. (*People* v. *Mayfield,* 85 Cal.App. 77, 79 [259 P. 75].) It does not appear from the record here that such error led to the verdicts which were reached. Appellant complains that counsel failed to call additional witnesses who would have testified as to his mistreatment and the reason why he wished to commit some offense for which he would be brought to trial. We have already said that such evidence would have been merely cumulative. Appellant admitted the commission of the acts of which he was accused and he was in no way curtailed in explaining his reasons therefor. Appellant was acquitted of the charged assault on Heck and was convicted of a lesser offense than that charged in respect to the assault on Smith. A review of the entire record compels the conclusion that appellant was conscientiously represented by counsel and far more ably than he could have represented himself. Under such circumstances, it cannot be said that refusing to allow appellant to defend personally without counsel resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

We need not consider at length the three instances which appellant cites as prejudicial misconduct upon the part of the prosecution. ▪ Appellant complains that the deputy

district attorney alluded to the fact that he was placed in isolation in .1949 for investigation of murder of a fellow inmate. That fact had already been placed in evidence by appellant's counsel. Moreover, the court, of its own volition, admonished the jury to disregard it ''absolutely and entirely.''

Likewise, the court instructed the jury to disregard a remark of the deputy district attorney which insinuated that George Heck's testimony might not be trustworthy. It may again be observed that the jury acquitted appellant of the alleged assault upon George Heck. Obviously, in so doing, they gave credence to his explanation of the matter.  Appellant has no cause to object because the deputy district attorney stated he preferred not to have him show the jury something about the knife which had been introduced in evidence. The prosecution was entitled to proceed with its cross-examination of appellant without volunteer demonstrations upon his part.

The judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1955.